**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CIBA SPECIALTY CHEMICALS** | ) | |
| **CORPORATION**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 05-0569-WS-C** |
| | ) | |
| **TENSAW LAND AND TIMBER** | ) | |
| **COMPANY, INC.**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on the Motion to File Petition of Intervention (doc. 24) submitted by would-be intervenors Jessie Fisher, Arlean Reed, Barbara Byrd, and Ronald McIntyre, on behalf of themselves and all others similarly situated (collectively, the "Intervenors"). The Motion has been briefed and is now ripe for disposition.

**I.     Background.**

Plaintiffs Ciba Specialty Chemicals Corporation, Syngenta Crop Protection, Inc. and Ciba-Geigy Corporation (collectively, the "Ciba Entities") brought this declaratory judgment action against defendants Tensaw Land and Timber Company, Inc. and Palamar Land Company, L.P. (collectively, "Defendants" or "Tensaw/Palamar"). Although the Complaint and Amended Complaint have been ordered temporarily sealed (see docs. 23, 33) to facilitate settlement, the crux of the dispute is Defendants' contention that the Ciba Entities contaminated their hunting and fishing properties in or near McIntosh, Alabama with Dichloro-Diphenyl-Trichloroethane ("DDT") in the 1950s and 1960s, then concealed their actions. This contamination is alleged to have emanated from a pesticide plant operated by the Ciba Entities in McIntosh beginning in or about 1952. In light of the disagreement between the Ciba Entities and Defendants as to the existence and extent of any contamination on Defendants' property, and as to the legal viability of Defendants' threatened claims, the Ciba Entities request a declaration as follows: (a) that any chemicals on Defendants' property do not pose a risk to humans or wildlife, or otherwise

constitute damage to that property; (b) that the Ciba Entities are not liable in tort for any chemicals on Defendants' property; (c) that any claims Defendants might bring against the Ciba Entities are barred on grounds of limitations, laches, statutes of repose, or estoppel; (d) that Defendants' property value has not been diminished by Ciba's McIntosh operations; and (e) that the Ciba Entities should be awarded costs and other relief.  (Amended Complaint, at 6-7.)  On December 2, 2005, less than two months after the Complaint was filed, the Ciba Entities' co-counsel of record submitted an Affidavit (doc. 26, Exh. A) stating that the Ciba Entities and Tensaw/Palamar "have reached an agreement in principle to resolve this dispute" and that "execution of any settlement agreement should occur within the next 4-6 weeks." (*Id.*)  On December 23, 2005, the Ciba Entities' counsel represented to the Court that the settlement process had been slightly delayed by year-end holidays, but that settlement should be concluded by no later than January 31, 2006.  (*See* doc. 31.)

Against this backdrop appear the Intervenors, who are named plaintiffs in a separate lawsuit filed as a putative class action against the Ciba Entities, styled *Jessie Fisher, et al. v. Ciba Specialty Chemical Corporation, et al.*, Civil Action No. 03-0566-WS-B (the "*Fisher* Action"), and presently pending before the undersigned.  According to the Third Amended Class Action Complaint (doc. 212) in the *Fisher* Action, the Ciba Entities "have committed intentional ongoing environmental damage" (*Id.*, ¶ 3) by operating the McIntosh facility in a manner that contaminated or otherwise devalued the Intervenors' property in and around McIntosh via groundwater, surface water, soil, sediment and air contamination through release of various hazardous compounds (including DDT, among others) on a daily basis up to and including the present.  (*Id.*, ¶¶ 19-21, 25-26.)  The *Fisher* Action alleges that the Ciba Entities' conduct has "damaged the [putative] Class by diminishing the value of their homes and properties making it difficult, if not impossible, to sell or mortgage their homes and properties, thereby preventing Plaintiffs from realizing the true worth of their homes and properties indefinitely."  (*Id.*, ¶ 29.) As property owners in the vicinity of the Ciba Entities' McIntosh facility, Tensaw and Palamar would presumably be prospective class members in *Fisher*.

In their proposed Petition of Intervention (doc. 24), Intervenors insist that the disposition of the instant action "may be utilized to greatly impair and/or impede Intervenors' ability to protect their interests" in the *Fisher* Action.  (Petition, ¶ 4.)  Specifically, the Intervenors express

alarm that judicial determinations in this case may have *res judicata* or collateral estoppel effect in the *Fisher* Action.  (*Id.*, ¶ 5.)  Intervenors further balk that Tensaw and Palamar's counsel in this case cannot and will not adequately represent the Intervenors' interests, given the recent inception of this action as compared to the two years that the Intervenors' counsel have represented them in connection with the *Fisher* Action.  (*Id.*, ¶ 6.)[1]  Finally, Intervenors object that any declaratory judgment entered by the undersigned in this action "may affect their property interests" in unspecified ways and that settlement negotiations between the Ciba Entities and Tensaw/Palamar may not be "conducted as arms-length transactions."  (*Id.*, ¶ 7.)[2]

**II.    Analysis.**

Intervenors contend that their Petition is proper under both the intervention as of right standards set forth in Rule 24(a), Fed.R.Civ.P., and the permissive intervention provisions of Rule 24(b), Fed.R.Civ.P.  The Court will consider each of these bases for intervention in turn.

###    A.    *Intervention as of Right Pursuant to Rule 24(a).*

Under Rule 24(a)(2), intervention as of right is authorized when "the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented

---

[1]    Intervenors proffer this argument despite the fact that Defendants' counsel has not yet appeared in this action, such that the identity, credentials, qualifications and skills of Tensaw/Palamar's attorney(s) are unknown to Intervenors.  The inconsistent nature of Intervenors' contention on this point is underscored by the fact that they decry their inability "to assess the adequacy of counsel" in one breath, then protest that their interests "cannot possibly be adequately represented" by such counsel in the next.  (Reply Brief, at 2, 5.)

[2]    In a reply brief, Intervenors amplify their fear that any settlement between the Ciba Entities and Tensaw/Palamar is somehow "suspect" by dint of the fact that the Complaint is under seal, thereby depriving the underlying negotiations of necessary scrutiny "in the light of day by this Court and others."  (Reply (doc. 28), at 6 n.2.)  This argument overlooks the fundamental truth that private parties appearing in this District Court routinely enter into confidential settlement agreements, free from scrutiny or second-guessing by this Court or anyone else.  Clearly, there is nothing inherently nefarious or improper about a settlement whose terms are confidential or otherwise not subject to judicial or third-party review.

by existing parties." *Id.*[3]  The Eleventh Circuit has adopted a four-pronged test for evaluating requests for intervention under Rule 24(a)(2), consisting of the following elements: (1) whether the application for intervention is timely; (2) whether the putative intervenor has an interest relating to the property or transaction which is the subject of the litigation; (3) whether the intervenor "is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest"; and (4) whether his interest is represented inadequately by existing parties.  *Stone v. First Union Corp.*, 371 F.3d 1305, 1308-09 (11th Cir. 2004); *see also United States v. City of Miami*, 278 F.3d 1174, 1178 (11th Cir. 2002); *Acceptance Indem. Ins. Co. v. Southeastern Forge, Inc.*, 209 F.R.D. 697, 700 (M.D. Ga. 2002).  A district court must grant a Rule 24(a) motion if all four prerequisites are satisfied.  *See Purcell v. BankAtlantic Financial Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996) ("Once a party establishes all the prerequisites to intervention, the district court has no discretion to deny the motion.").

There is no quarrel as to the timeliness of the Intervenors' Motion, nor could there be given that it was filed a bare six weeks after the Complaint, in advance of any responsive pleading by Defendants, and indeed prior to any appearance by Defendants' counsel in this action.  Further, in opposing the Motion, the Ciba Entities do not purport to rebut Intervenors' assertion that Tensaw/Palamar are inadequate to represent the Intervenors' interests; therefore, the Court will assume that this criterion is satisfied, as well.  Thus, the key battlegrounds for the Rule 24(a)(2) component of the Intervenors' request are whether they have a cognizable interest relating to the property or transaction at issue in this case and, if so, whether disposition of this case is likely to impair or impede the Intervenors' ability to protect that interest.  The Court answers both of these questions in the negative.

The type of "interest" necessary to sustain intervention as of right must be one that is "direct, substantial and legally protectable."  *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (citation omitted).  "[A] legally protectable interest is something more than an economic interest"; rather, the law requires that "the interest be one

---

[3]    A separate clause of Rule 24(a) authorizes intervention as of right when "a statute of the United States confers an unconditional right to intervene."  Rule 24(a)(1).  Intervenors do not identify any such statutory basis for intervention here.

which the *substantive* law recognizes as belonging to or being owned by the applicant." *Id.* at 1311 (quoting *United States v. South Florida Water Management Dist.*, 922 F.2d 704, 710 (11th Cir. 1991)).[4]

Here, the Intervenors do not claim to own or otherwise to have any legally cognizable interest in the specific real property that is the subject of the dispute between the Ciba Entities and Tensaw/Palamar. They do not purport to have been privy to any communications between the Ciba Entities and Tensaw/Palamar regarding soil and water sampling performed on Defendants' properties in the 1980s and 1990s. Instead, the sole interest in this dispute identified by Intervenors is the ostensible overlap in issues litigated in this case and those litigated in the *Fisher* Action. Because both actions involve questions as to whether the Ciba Entities contaminated land in and near McIntosh, Alabama, Intervenors say, they have an interest in the outcome of this case. Intervenors go on to state that this interest is direct, substantial and legally protected "in that the nature of the disposition of the lawsuit may have a preclusive effect on Intervenors' ability to protect their interests that are so closely related." (Reply Brief, at 3.) In particular, Intervenors articulate concern that any determination in this action that the Ciba Entities did not contaminate the land of Tensaw and Palamar "may be pled by the Ciba Plaintiffs as res judicata and/or collateral estoppel in the *Fisher* matter which would significantly affect Intervenors' interests." (Petition, ¶ 5.)

---

[4]     To render this abstract, amorphous concept more concrete, the *Mt. Hawley* panel explained that a "legally protectable interest is an interest that derives from a legal right," such as where a putative intervenor sought to intervene in proceedings to interpret a state regulation and state law conferred upon intervenor the legal right to participate. *Id.* at 1311 & n.5. Two other, contrasting examples illustrate the point. In *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242 (11th Cir. 2002), the State of Florida was deemed to have a legally protectable interest in a lawsuit between Georgia and the U.S. Army Corps of Engineers regarding Georgia's ability to increase the water volume siphoned from Lake Lanier for use by the city of Atlanta. Because the withdrawal of water from Lake Lanier would, as a practical matter, impact Florida via increased wastewater discharges flowing downstream into Florida, the *Georgia* court concluded that Florida's interest in the proceedings was legally protectable. *Id.* at 1250-52. By comparison, in *Mt. Hawley*, an insurance company filed a declaratory judgment action against two insureds seeking a declaration that it had no obligation to provide coverage for a wrongful death action arising from a drowning on the insureds' property. The decedent's estate sought to intervene as of right, but was deemed not to have a legally protectable interest in a dispute over coverage that may or may not be available under the subject insurance policy. 425 F.3d at 1311-12.

-5-

The Court perceives two critical flaws in the Intervenors' efforts to bootstrap a legally protectable interest in this controversy from the mere superficial similarity of subject matter between this action and the *Fisher* Action.  First and foremost, there is an inherent logical deficiency in the notion that a ruling adverse to Tensaw and Palamar would spell doom for the Intervenors' claims against the Ciba Entities.  It would do no such thing.  Assuming the Court found that Tensaw and Palamar's property has not been contaminated and their property values have not been diminished, there is no *a priori* reason why such holdings would extend to other properties in other places.  In other words, that testing over a period of nearly two decades at the Tensaw/Palamar sites may reflect no significant DDT contamination says nothing about whether plaintiffs' properties presently are polluted with hazardous substances originating from Ciba's McIntosh plant.  These are different transactions, different locations, and different factual questions, such that a finding as to one is in no way outcome-determinative of the other.

Second, even if findings regarding Defendants' property were probative as to the contaminated condition of Intervenors' property, Intervenors' stated fears of issue and/or claim preclusion are misplaced.  Absent the granting of their Motion to Intervene, Intervenors are not parties to this action and cannot be bound by any rulings herein pursuant to collateral estoppel or res judicata.  *See, e.g.*, *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001) ("Under res judicata, also known as claim preclusion, a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action."); *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1293 (11th Cir. 2003) (collateral estoppel requires that "the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding").  "If identity or privity of parties cannot be established, then there is no need to examine the other factors in determining whether res judicata or collateral estoppel applies." *E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir. 2004).  Plainly, there is neither identity of parties nor privity of parties as between Tensaw/Palamar and the Intervenors.  As such, any attempt by the Ciba Entities to accord preclusive effect in the *Fisher* Action to judicial determinations made in this action would

be fatally flawed.[5]  To allow intervention as of right based on such a slender reed would expand Rule 24(a)(2) jurisprudence beyond the scope of any authorities cited by Intervenors.  *See generally Purcell*, 85 F.3d at 1513 (opining that intervenor's "interest in the collateral estoppel effect of the jury's verdict in this case is too collateral, indirect and insubstantial to support intervention as of right").

------

[5]      In response to the Ciba Entities' arguments about the obvious inapplicability of principles of res judicata and collateral estoppel to any determinations in this action vis a vis the *Fisher* Action, Intervenors complain that the Ciba Entities have already resorted to issue/claim preclusion arguments in the *Fisher* Action, such that they cannot be trusted to eschew a similar tack here.  (Reply Brief, at 4-5.)  Specifically, Intervenors protest that in the *Fisher* Action, the Ciba Entities have invoked judicial determinations made in yet a third set of proceedings relating to McIntosh contamination, captioned *Carrie Jean LaBauve, et al. v. Olin Corporation, et al.*, and bearing Civil Action No. 03-567-WS-B (the "*LaBauve* Action"), seeking preclusive effect of same in *Fisher*.  But the posture of the *Fisher* Action relative to this case is substantially and materially different than its posture relative to the *LaBauve* Action.  *Fisher* and *LaBauve* were filed contemporaneously by the same counsel, alleging related theories of liability on behalf of overlapping putative classes against neighboring industrial defendants in McIntosh, Alabama. Whatever the ultimate merits of invoking preclusion between those two actions (which this Court expressly declines to decide here), there is at least a colorable basis for articulating a preclusion argument in the *Fisher* Action based on determinations in the *LaBauve* Action.  No comparable parallels exist between *Fisher* and the case at bar.  Notably, Tensaw/Palamar are represented by different counsel than the *Fisher* plaintiffs and are litigating narrow, isolated issues specific to their property, rather than broad issues concerning dozens (if not hundreds) of property owners in and around McIntosh.  As mentioned *supra*, the lack of identity or privity between the *Fisher* plaintiffs and Tensaw/Palamar would plainly bar any application of res judicata or collateral estoppel here.  That the Ciba Entities might seek to invoke preclusion in the *Fisher* Action based on events in the *LaBauve* Action in no way suggests that preclusion might reasonably be argued in *Fisher* based on events occurring in this case.  Intervenors' expressed fears in that regard are unfounded.  Besides, the Ciba Entities have taken a forceful stand that res judicata and collateral estoppel cannot permit findings in this action to carry over to the *Fisher* Action.  *See, e.g.,* Opposition Brief (doc. 26), at 4 ("Likewise, a determination favorable to [Ciba Entities] in this case would have no collateral estoppel effect in the Fisher Matter.").  Having thus unequivocally staked themselves to a position that there can be no preclusive effect in the *Fisher* Action of any determinations made here, the Ciba Entities would expose themselves to judicial estoppel and, worse, the risk of sanctions if they nonetheless argue the reverse position in the *Fisher* Action should it become expedient to do so.  The Ciba Entities cannot flip-flop on this question where they have bound themselves to the position that there can be no collateral estoppel or res judicata effect of decisions in this case in the *Fisher* Action.  The Court expects the Ciba Entities scrupulously to honor and observe the position to which they have committed themselves in this litigation, such that Intervenors' fears otherwise will never materialize.

-7-

In a final effort to secure intervention as of right, Intervenors cite the line of authority deeming a potential *stare decisis* effect to supply a practical disadvantage that may confer a right to intervene under Rule 24(a)(2). Such precedents are well documented in the Eleventh Circuit. For example, in *Stone v. First Union Corp.*, the panel cited earlier decisions for the proposition that "[w]here a party seeking to intervene in an action claims an interest in the very property and very transaction that is the subject of the main action, the potential *stare decisis* effect may supply that practical disadvantage which warrants intervention as of right." 371 F.3d at 1310 (citations omitted). The *Stone* court hastened to add that "the potential for negative *stare decisis* effects does not automatically grant plaintiffs the right to intervene" unless the practical impairment facing them is "significant." *Id.* Thus, where intervenors were claiming that a bank policy violated the ADEA and injured them, and where a plaintiff brought an individual suit against the bank claiming that the same policy violated the ADEA and injured him, the Eleventh Circuit deemed intervention as of right warranted. *Id.* (explaining that "one court's ruling on whether the bank's policy, as a matter of law, was in violation of the ADEA could influence later suits" and "would have significant persuasive effects"); *see also Alabama v. U.S. Army Corps of Engineers*, 229 F.R.D. 669, 672 (N.D. Ala. 2005) (recognizing that *stare decisis* effects may provide impetus to justify intervention as of right).

But *Stone* and its progeny are readily distinguishable here. This action does not involve "the very property and very transaction" being litigated in the *Fisher* Action, but manifestly concerns different property and different transactions. Moreover, unlike in *Stone* (where a finding in one case that the bank's policy violated the ADEA as a matter of law would directly conflict with a finding in the other that it did not), there is no inherent tension or incompatibility between a finding in this case that, for example, Tensaw/Palamar's property is not contaminated with DDT from the Ciba facility in McIntosh, and a finding in *Fisher* that Intervenors' property is so contaminated. Because the property is different, the facts are different, and the proof is different, no ruling by this Court on that point in this action "would have significant persuasive effects" in the *Fisher* Action. Accordingly, it is the opinion of this Court that the potential for an adverse ruling to Tensaw/Palamar in this action creates no significant practical impairment for Intervenors in the *Fisher* Action; therefore, the "*stare decisis*" series of cases does not favor

intervention as of right here.[6]

For all of these reasons, the undersigned finds that Intervenors have failed to establish a direct, substantial legally protectable interest in these proceedings, much less that disposition of this action will, as a practical matter, substantially impair their ability to vindicate such interest in the *Fisher* Action.  Intervenors are not entitled to intervene in this matter as of right.

> **B.      Permissive Intervention Pursuant to Rule 24(b).**

In the alternative, Intervenors request leave of Court to intervene permissively pursuant to Rule 24(b)(2), Fed.R.Civ.P.  Simply put, permissive intervention is appropriate "where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties."  *Mt. Hawley*, 425 F.3d at 1312 (citing *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1250 (11th Cir. 2002)).  It is beyond cavil that Rule 24(b) intervention is discretionary with the district court, and that permissive intervention may properly be denied even if there are common questions of law or fact and the other requirements of Rule 24(b)(2) are otherwise satisfied.  *See, e.g., Davis v. Butts*, 290 F.3d 1297, 1299 (11th Cir. 2002); *Purcell*, 85 F.3d at 1513; *Acceptance Indem.*, 209 F.R.D. at 701 (explaining that it lies "within the discretion of the court to allow such intervention, taking into consideration whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties").

In their briefs, Intervenors argue at some length that common questions of law and fact link this action to the *Fisher* Action.  Be that as it may, Intervenors make no pretense of establishing that the requested intervention "will not unduly prejudice or delay the adjudication of the rights of the original parties."  *Mt. Hawley*, 425 F.3d at 1312.  To the contrary, Intervenors

---

[6]     One district court considering the *stare decisis* impact on intervention as of right formulated the test this way:  If resolution of the main action in a manner adverse to the intervenor would render "worthless for all practical purposes" an interest claimed by the intervenor in an ancillary action, then the requisite practical harm warranting intervention as of right exists.  *CSX Transp., Inc. v. Georgia Public Service Comm'n*, 944 F. Supp. 1573, 1578 (N.D. Ga. 1996).  Measured by this yardstick, nothing the Court could say or do in this litigation would make Intervenors' claims in the *Fisher* Action "worthless" because any findings here would be specific to the Tensaw/Palamar properties, and not readily extrapolated to embrace Intervenors' own unique circumstances.

tacitly admit that their inclusion in this case <u>will</u> impede resolution of this action, given the imminent finalization of a settlement between the Ciba Entities and Tensaw/Palamar.  (*See* Reply Brief, at 7 (recognizing that intervention will yield "delay of the resolution of this matter").)  Indeed, a fair reading of Intervenors' submissions suggests that they wish to inject themselves in this litigation precisely for the purpose of disrupting the nearly-concluded settlement negotiations between the parties.  (*See* Reply Brief, at 7 (imminent settlement "is the very reason Intervenors' Motion should be granted").)  The Court is at a loss to understand the Intervenors' position that their interests will be adversely affected if a private, confidential settlement is reached between the Ciba Entities and Tensaw/Palamar for alleged contamination of the Tensaw/Palamar properties.  Obviously, any such settlement will have no binding effect on Intervenors, as nonparties to same, and in the absence of some judicial imprimatur which the Ciba Entities and Tensaw/Palamar have not requested, this "off-the-books" settlement cannot possibly prejudice Intervenors in the *Fisher* Action.[7]

       The Eleventh Circuit has lauded the "public policy values that are furthered by permitting parties to settle a case without the interference of interlopers."  *Purcell*, 85 F.3d at 1513.  This consideration looms large here.  For strategic reasons apparently unrelated to any prejudice they might sustain in the *Fisher* Action, Intervenors seek to disturb and upset a virtually completed settlement between private interests in this case.  The undersigned will not allow permissive

---

       [7]     Intervenors impute collusion and villainy to the fact that negotiations are occurring "under seal" and not "in the light of day."  (Reply Brief, at 6 & n.2.)  But parties conduct private, confidential settlement negotiations all the time, and there is absolutely no evidence to support Intervenors' reckless speculation that these "discussions may be less than arms-length."  (*Id.*)  Intervenors would make much of the facts that the Complaint and Amended Complaint have been temporarily sealed and that defense counsel has not appeared in this case.  (Reply Brief, at 1-2.)  Neither fact raises an inference of perfidy or treachery on the part of the litigants in this action.  The temporary sealing of the pleadings was ordered only after a telephonic hearing before then-Magistrate Judge DuBose, in which she satisfied herself of the legitimacy of the requested relief.  The pleadings have not been and will not be permanently sealed, so Intervenors will have ready access to their contents in due course.  And surely there is nothing unusual, much less improper, in defense counsel's failure to appear in a two-month old action.  As Intervenors' counsel is undoubtedly aware, it is altogether commonplace for a defendant to avoid appearing or otherwise incurring unnecessary litigation expense when settlement is believed to be imminent.

intervention to vindicate such an improper purpose that cuts against public policy, not to mention both the letter and spirit of Rule 24(b).[8]

**III.    Conclusion.**

For all of the foregoing reasons, Intervenors' Motion to File Petition of Intervention (doc. 24) is **denied**.


DONE and ORDERED this 30th day of December, 2005.



s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[8]        To be clear, the undersigned's denial of Rule 24(b)(2) intervention is predicated on the Ciba Entities' representations that settlement is imminent in this action, and the near-certainty that intervention would unduly delay or prejudice adjudication of the parties' rights herein without conferring any legitimate countervailing benefit to Intervenors.  That said, if the parties do not consummate their settlement within a reasonable time, the balance of equities may well shift.  In that event, the Court will entertain a renewed motion for permissive intervention under Rule 24(b)(2) should Intervenors wish to pursue it.